MORRIS MECHANICAL ENTERPRIS-
ES, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 508–80C.

United States Claims Court.

March 3, 1983.

H. Robert Ronick, Atlanta, Ga., for plaintiff, Katz, Paller & Land, Atlanta, Ga., of counsel.

M. Susan Burnett, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

OPINION

SPECTOR, Judge:

On November 17, 1982, it was held in a decision on the merits of this case that plaintiff was:

> entitled to an extension of time sufficient to permit it to complete its work after installation of the chiller by another contractor, and there has been no "refusal or failure to complete the work within the specified time," when it is properly extended for circumstances beyond plaintiff's control. It follows that defendant is not entitled to withhold the sum of $23,100 in liquidated damages from amounts otherwise due plaintiff under its contract and that judgment in that amount is to be entered in favor of plaintiff.[1]

Plaintiff now applies for attorneys' fees and other expenses under the Equal Access to Justice Act [2] which provides in pertinent part that:

> * * * a court *shall award to a prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a) [3] incurred by that party in any civil action * * * brought by or against the United States in any court having jurisdiction of that action, *unless* the court finds that the position of the United States was *substantially justified* * * *. [Emphasis supplied].

Plaintiff's application details attorneys' fees for professional services rendered between September 1980 and November 1982, of $21,472.50, consisting of 286.3 hours at $75 per hour; pretrial deposition transcript costs of $129.50, and trial transcript costs of

---

1. Reported at 1 Cl.Ct. 50. Judgment was entered on November 17, 1982 (Rule 58 of this court). A notice of appeal to the U.S. Circuit Court of Appeals for the Federal Circuit was filed January 17, 1983 (Rule 4(a), FRAP).

2. 28 U.S.C. § 2412.

3. These are the costs enumerated in 28 U.S.C. § 1920.

$167.06; for a total fees and expenses claim of $21,769.06.[4]

Defendant's opposition is on the following grounds:

I.   This court does not have jurisdiction to entertain applications under the Equal Access to Justice Act.

II.   In any event, defendant's position in this case was substantially justified.

III.   Even if plaintiff were found to be entitled to recover, some of the fees and expenses claimed may not be recoverable because:

A.   They were incurred prior to the effective date of the Act, October 1, 1981.

B.   The predecessor of this court (U.S. Court of Claims) did not in the exercise of its discretion, award costs.

C.   Any fees and expenses attributable to a claim before the General Accounting Office (all the amounts claimed relate only to litigation in this court) would not be recoverable.

D.   The hourly rate ($75) claimed for attorneys' fees, is unreasonable and excessive.

Defendant's attack upon the jurisdiction of this court in these cases has been rejected in a number of prior cases[5] and it is similarly rejected here. This brings us to the main issue, namely, whether or not defendant's litigation position was "substantially justified."

### History of the Underlying Litigation

Briefly summarizing the history of the underlying litigation, for measurement against that statutory standard, we see that plaintiff, a small business, was one of a multiplicity of prime contractors performing various segments of a construction project for the General Services Administration.[6] This necessarily increased GSA's responsibility for coordinating the work of the various prime contractors, a responsibility which would ordinarily be assigned to a single prime contractor charged with coordinating the work of a multiplicity of his subcontractors.

Plaintiff is a small mechanical contractor specializing in the installation of heating and air conditioning systems. In this instance, GSA, in fulfilling its quota under the small business set-aside program, awarded plaintiff a prime contract covering just the purchase of a chiller by plaintiff from one of the major manufacturers of air conditioning equipment. Following delivery of the equipment to the site by the manufacturer, it was to be installed in a building by another prime contractor, Ivey's Plumbing. After installation by Ivey's Plumbing, plaintiff was to complete the work called for under its contract by performing certain "start-up" service on the chiller.

Plaintiff ordered the chiller from Airtemp, the only major manufacturer which could meet the size, factory tests, and delivery requirements. Plaintiff was awarded the contract on its low bid of $78,763. For reasons beyond the control and without the fault or negligence of plaintiff, Airtemp did not deliver the chiller to the site until 231 days after the delivery date it had promised. This may or may not have also been beyond the control and without the fault or negligence of Airtemp, which was hampered by a strike and by problems with its suppliers.

But even after delivery of the chiller, Ivey's Plumbing could not install it in the building where it was to function for reasons unrelated to plaintiff's contract or otherwise attributable to plaintiff. The equipment room had not been completed. Connections to and locations of equipment had not been completed or ascertained. Struc-

---

4.   Note that fees and expenses incurred and claimed are almost equal to the amount of the judgment recovered.

5.   See Hock, Executrix v. United States, 1 Cl.Ct. 416 (Cl.Ct.1983) (Spector, J.) and cases cited therein at note 4.

6.   Testimony at trial indicated there were from 35 to 57 separate prime contractors on the site.

tural problems in the room, particularly in the ceiling, had not been worked out. Stop orders were issued by GSA. Workers discovered unknown, subsurface, underground obstructions at the construction site which would have delayed completion of the building, and therefore installation of the chiller, in any event. GSA was slow in issuing notices and change orders as needed. As a result, it was not until 6 months after delivery of the chiller that plaintiff was finally requested to and did promptly provide the "start-up" services for the chiller which enabled it to "complete the work" called for under its contract.

Meanwhile, defendant had been withholding $23,100 from plaintiff's contract price for what it perceived to be its "refusal or failure to complete the work within the specified time." This withholding was predicated upon a perceived delay in completing the work of 231 days at $100 per day. Liquidated damages were not, however, to be assessed if delay "in the completion of the work arises from unforeseeable causes beyond the control and without the fault or negligence of the contractor." Plaintiff's requests for extensions of time were not acted upon by GSA.

Testimony as to what, if any, actual delay resulted from the late arrival of the chiller is confused and unreliable. Even the GSA witness attributed a *maximum* of 44 days to that problem. As plaintiff points out in this application for fees and expenses, it would readily have settled this dispute for $4400 rather than incurring the equivalent of its ultimate recovery, in litigation fees and expenses.

The decision on the merits found that plaintiff's repeated requests for extensions of time based on its problems with Airtemp were not acted upon by GSA. More importantly, there had meanwhile developed far more serious and supervening delays which were in no way attributable to plaintiff and which became the proximate and effective cause of plaintiff's inability to complete its work. Under the contract, damages were to be assessed only for "failure to complete

the work within the specified time," and plaintiff's "work" under the contract consisted not only of purchasing and delivering a chiller to the site, but also of providing "start-up" service for the chiller *after* it had been installed and connected up by another independent prime contractor. The latter was delayed by unrelated site conditions and problems, with the result that plaintiff was delayed in completing its work of furnishing start-up services following installation by others.

On the basis of the foregoing, it was concluded that plaintiff was entitled to an extension of time sufficient to permit it to complete its work after installation of the chiller by another contractor; that there had been no "refusal or failure to complete the work within the specified time" when that time is properly extended for reasons beyond the contractor's control and without its fault or negligence; that defendant was not entitled to withhold the sum of $23,100 in liquidated damages from plaintiff's contract price; and that plaintiff was entitled to judgment in that amount.

*Discussion*

The difficulty with plaintiff's present application for fees and expenses based on the above facts is that most of those facts were not developed until trial and post-trial briefing. Both parties tried the case on the assumption that the only issue involved was plaintiff's responsibility for late delivery by Airtemp of the chiller to the site as if that were the event which completed the work to be performed under plaintiff's contract. Plaintiff's original request for a time extension was made on that basis. It was only at trial that Government witnesses acknowledged that subsequent events and delays in unrelated areas had removed the delivery of the chiller from the "critical path."[7] It was only at trial that it appeared that the chiller did not in any event become fully operational until several months after plaintiff had completed its contract by providing "start-up" services on the chiller, and

---

**7.** Defined as those items which if delayed, could delay overall completion of the project.

that its prior installation by others had been delayed by other unrelated factors which delayed plaintiff. When the facts are viewed prospectively rather than with the benefit of hindsight, defendant has sustained its burden of proving that its conduct in litigating the issues in this case was substantially justified, and that it was reasonable in litigating the factual and legal issues presented.[8]

### Conclusion

Plaintiff's application for fees and expenses is hereby DENIED.[9]

---

**8.** *See* and *cf. Gava v. United States,* 699 F.2d 1367 (Fed.Cir.1983); and *Kay Mfg. Co. v. United States,* 699 F.2d 1376 (Fed.Cir.1983).

**9.** The remaining arguments offered by defendant and set forth at the beginning of the opinion are rendered moot by this decision on the "substantially justified" issue.